UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SISTER E. JONES BEY,

                    Plaintiff,

          -against-

DANA LA CASSE, *et al.*,

                    Defendants.

20-CV-9171 (LLS)

ORDER OF DISMISSAL WITH LEAVE
TO REPLEAD

LOUIS L. STANTON, United States District Judge:

          Plaintiff, who is proceeding *pro se* and *in forma pauperis* (IFP), filed this complaint alleging that Defendants violated her federally protected rights. By order dated December 10, 2020, the Court directed Plaintiff to amend her complaint to address deficiencies in her original pleading. Plaintiff filed an amended complaint on January 27, 2021, and the Court has reviewed it. The action is dismissed for the reasons set forth below, but the Court grants Plaintiff leave to replead some of her claims.

## STANDARD OF REVIEW

          The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

          While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff filed her original complaint under the Court's federal question and diversity jurisdiction, 28 U.S.C. §§ 1331 and 1332, against the City of New York; Dana La Casse, Child Protection Specialist with the New York City Administration for Children's Services (ACS); and Vicknell Powell, Plaintiff's landlord. In that complaint, Plaintiff alleged that false reports lodged with the New York State Office of Children and Family Services Registry resulted in ACS initiating an abuse or neglect action against her in Bronx County Family Court, and ACS employees entering her home without permission. Plaintiff further alleged that her landlord was a

"co-conspirator" in the ACS matter and also stole her mail, harassed her, and attempted to unlawfully evict her.

By order dated December 10, 2020, the Court directed Plaintiff to amend her complaint. Construing Plaintiff's constitutional claims as arising under 42 U.S.C. § 1983, the Court held that: (1) Plaintiff had failed to allege facts suggesting that the ACS employees had violated her constitutional rights; (2) Plaintiff had failed to state a claim against New York City because she had not alleged that the events giving rise to this action resulted from a municipal policy, custom, or practice; and (3) Plaintiff had failed to allege facts showing that her landlord had conspired with the other defendants, or that the Court had diversity jurisdiction over any state law claims. The order further noted, without deciding, that the Court was likely precluded from intervening in ongoing Family Court proceedings.[1]

In response to the Court's order, Plaintiff filed an amended complaint against the following defendants: the City of New York; ACS and ACS employees Dana La Casse, Brenda Ramirez, Vanessa Williams, and Barbara Daniely; the New York City Police Department (NYPD), NYPD Sgt. Beckett, and Police Officers Hidalgo, Almonte, Solomon, and Canales; the State of New York; Suffolk County Family Court Referee Andrea Amoa and Judge Paul Hensley; Bronx Family Court Judge Ronna Gordon-Galchus; Plaintiff's landlord, Vicknell Powell and Powell's daughter, Jane Doe Powell (the Powells); and the father of Plaintiff's eldest

---

[1] In her complaint, Plaintiff referred to a § 1983 complaint that she has pending in the United States District Court for the Eastern District of New York. *See Bey v. Antoine*, No. 19-CV-1877 (E.D.N.Y. filed Mar. 27, 2019) (amended complaint alleging, among other things, that in May 2018, employees of ACS and the NYPD unlawfully entered her Brooklyn apartment, removed her children pursuant to a court order, falsely arrested her, and used excessive force against her). (*Id.* ECF 9.)

child (P.J.Z-B) and his wife, William Pierce and Shanta Pierce (the Pierces). (ECF 7.) The amended complaint contains the following allegations.

Plaintiff resides at the Lyric Playhouse Moorish Sudbury Model Institute in the Bronx. The father of Plaintiff's eldest child and his wife (the Pierces), who live in Suffolk County, New York, violated a Bronx County Family Court order by taking P.J.Z-B "hostage" and unlawfully restricting Plaintiff's access to P.J.Z-B. The Pierces then initiated a new custody action in the Suffolk County Family Court and gave false information to that court. Suffolk County Family Court Referee Amoa and Judge Hensley are unlawfully exercising jurisdiction over the custody dispute, and Bronx County Family Court Judge Gordon-Galchus wrongly denied Plaintiff's petition for a writ of *habeas corpus* seeking P.J.Z-B's return.

Plaintiff's landlord and daughter (the Powells) stole Plaintiff's packages and other mail; opened up an account in Plaintiff's name with Consolidated Edison; hired a man to enter Plaintiff's apartment through a window; directed a woman on September 24, 2020, to knock on Plaintiff's door and "verbally assault" her after Plaintiff "made a complaint about her unlawfully entering [Plaintiff's] home without written notice or consent"; cursed at Plaintiff and her other children, who are 13, 12, and 8 years of age; sprayed the children with a "peppered substance"; took Plaintiff's photograph without permission while she was feeding the hungry; sent letters containing scandalous allegations about Plaintiff to the state child abuse registry and also filed false reports in an attempt to have Plaintiff's children kidnaped; and called the police and falsely claimed that Plaintiff's children were home unsupervised and "hurt." At one point, Vicknell Powell approached Plaintiff with a kitchen knife, which led Plaintiff to fear for her life.

Plaintiff asserts claims against the Powells of slander, libel, fraud, mail tampering, harassment, assault and battery, identity theft, interference with Plaintiff's business interests, and discrimination on the basis of nationality, family size, religion, and source of income.

On July 30, 2020, while Plaintiff was "running errands," Sgt. Beckett and Police Officers Almonte, Hidalgo, and Doe came to Plaintiff's home in response to the 911 call, allegedly made by Powell, reporting that Plaintiff's three younger children were home unsupervised and were injured or in need of assistance. (*Id.* at 7.) According to Plaintiff, the police officers unlawfully entered her home and traumatized the children by threatening them with ACS intervention. (*Id.*) Plaintiff does not allege that the children were removed from the home on that occasion, and she does not explain what else, if anything, happened in response to the police call. Officer Canales took no action in response to Plaintiff's report that Vicknell Powell had threatened her with a knife.

La Casse from ACS twice came to Plaintiff's home, and Plaintiff told her that the reports of neglect or abuse were false and retaliatory. ACS employees (La Casse, Ramirez, Daniely, and Williams) tried unsuccessfully to get a court order to enter Plaintiff's home until October 6, 2020, when the Bronx County Family Court issued an *ex parte* order allowing such entry without prior notice to Plaintiff.[2] Plaintiff asserts without explanation that the pending Eastern District case creates a "conflict of interest" in connection with this case.

Plaintiff seeks the following relief: an order of protection against the Pierces; an order directing ACS to "cease" its "11-year investigation" into her family; an order to have the family court proceedings consolidated and transferred to this Court; an apology from city employees for

---

[2] The Bronx County Family Court proceedings involving ACS appear to be unrelated to the custody matter in that court between Plaintiff and the Pierces.

committing fraud against her; the transfer of the title of the building where Plaintiff resides from Powell to the Lyric Playhouse Moorish Sudbury Model Institute; the firing of all the family court officials; and millions of dollars in damages from all Defendants.

## DISCUSSION

**A.**     **The Court must abstain from intervening in child custody matters**

The Court construes Plaintiff's request that the ongoing proceedings in Bronx and Suffolk County Family Courts be consolidated and transferred to this District as a request for this Court to either intervene in or take over child custody proceedings. But this Court cannot consider those claims because of the domestic relations abstention doctrine.

In 1990, in *American Airlines, Inc. v. Block*, the United States Court of Appeals for the Second Circuit instructed federal district courts to abstain from exercising federal-question jurisdiction over claims involving domestic-relations issues, so long as those claims could be fully and fairly determined in the state courts. *See* 905 F.2d 12, 14 (2d Cir. 1990) (holding that federal district court should abstain from exercising its federal-question jurisdiction over claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child . . . .") (internal quotation marks and citation omitted).

Two years after the Second Circuit issued its decision in *American Airlines*, the Supreme Court of the United States held, in *Ankenbrandt v. Richards*, that a previously recognized exception to the federal district courts' subject-matter jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees" in actions brought under a federal district court's diversity jurisdiction. 504 U.S. 689, 703 (1992).

In *Deem v. DiMella-Deem*, the Second Circuit held that regardless of the Supreme Court's holding in *Ankenbrandt*, its own previous holding in *American Airlines* remains good law. 941 F.3d 618, 621 (2d Cir. 2019). Thus, "[a]lthough the domestic relations '*exception*' to

subject matter jurisdiction recognized by the Supreme Court in *Ankenbrandt* . . . does not apply in federal-question cases, the domestic relations *abstention* doctrine articulated in *American Airlines* does." *Id.* (emphasis in original). Federal district courts must therefore abstain from exercising their federal-question jurisdiction over claims involving domestic-relations issues and dismiss those types of claims for lack of jurisdiction when they are asserted under diversity jurisdiction. *See id.* at 621-24.

Plaintiff asserts claims under the Court's federal-question jurisdiction and asks this Court to either vacate or overturn family court orders, or to otherwise intervene in custody proceedings. But unless Plaintiff can show that there is an obstacle that prevents her from receiving a full and fair determination of the issues in the state courts, this Court must abstain from exercising its federal-question jurisdiction over her claims arising from family court's orders and their enforcement. *See Deem*, 941 F.3d at 621-25 (affirming *sua sponte* dismissal under domestic relations abstention doctrine).

**B.    Section 1983 claims against the named defendants**

**1.    Private defendants (the Pierces and the Powells)**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass' n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted); *see also Tancredi v. Metro. Life*

*Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (" A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." ).

Plaintiff makes no allegations that the Pierces, who are private individuals, acted under color of state law. They therefore cannot be held liable under § 1983. And Plaintiff's unsupported allegation that Powell was a "co-conspirator" with ACS is insufficient to show that Powell should be deemed a state actor for purposes of § 1983 liability. *See, e.g., McKnight v. Middleton,* 699 F.Supp.2d 507, 531 (E.D.N.Y. 2010) (dismissing Section 1983 claims when the plaintiff asserted no factual basis for allegations that private actors were acting in a conspiracy with state actors to deprive the plaintiff of constitutional rights) *aff'd,* 434 F. App'x 32 (2d Cir. 2011) (summary order).

Accordingly, any § 1983 claims asserted against the Pierces and the Powells are dismissed for failure to state a claim on which relief may be granted.

### 2.   ACS, the NYPD, and the City of New York

The Court must dismiss Plaintiff's claims against ACS and the NYPD because as agencies of the City of New York, they are not entities that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Friedman v. N.Y.C. Admin. For Children's Servs.*, 502 F. App'x 23, 27 n.3 (2d Cir. 2012) (summary order) (ACS is not a suable entity); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (the NYPD is not a suable entity); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency.").

Plaintiff also names the City of New York. As noted in the December 10, 2020 order to amend, however, when a plaintiff sues a municipality under § 1983, such as the City of New

York, the plaintiff must show that the municipality itself caused the violation of the plaintiff's rights, *see Connick v. Thompson*, 563 U.S. 51, 60 (2011), by alleging facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

The amended complaint does not provide facts showing that a policy, custom, or practice of the City of New York has caused violations of her federal constitutional rights. The Court therefore also dismisses Plaintiff's § 1983 claims against the City of New York.

### 3.  Employees of ACS and the NYPD

i.   ACS Employees

The Court held in its prior order that Plaintiff's allegations against the ACS employees did not state a viable § 1983 claim. (ECF 4.) The allegations in the amended complaint do not change this analysis. Plaintiff alleges that Defendants entered her home under a court order, and that court proceedings are ongoing. These facts do not suggest that the ACS Defendants entered her home unlawfully. *See Smith v. Tkach*, 19-3240, 2021 WL 485724 (2d Cir. Feb. 10, 2021) (seizure of children by social services under court order did not state a claim under the Fourth or Fourteenth Amendment) (summary order). If the Family Court issues a final decision with which Plaintiff disagrees, her remedy is to appeal to the New York State Supreme Court, Appellate Division, rather than filing a civil rights action.[3] *See McKithen v. Brown,* 481 F.3d 89, 96 (2d

---

[3] While the Court is not dismissing on this ground, at least some of Plaintiff's claims are time-barred. Plaintiff alleges that ACS has been investigating her family for 11 years. The statute of limitations for § 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions," *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In New York, that period is three years. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79-80 (2d Cir. 2002). Section

Cir. 2007) (noting that federal district courts are not authorized to exercise appellate jurisdiction over state court judgments).

ii.   NYPD officers

Ordinarily, the Fourth Amendment requires that state officials, such as the police, obtain a warrant based on probable cause before entering a home to conduct a search or to seize an individual. *See Wilson v. Layne,* 526 U.S. 603, 610–11 (1999); *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). The Fourth Amendment forbids the government from conducting unreasonable searches, and "physical entry of the home is the chief evil" the Fourth Amendment was designed to deter. *Payton v. N.Y.*, 445 U.S. 573, 585 (1980) ("the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.") Accordingly, "[t]he Fourth Amendment generally prohibits a warrantless entry into an individual's home." *Callahan v. City of New York*, 90 F.Supp.3d 60, 69 (E.D.N.Y.2015); *see also United States v. Elliott*, 50 F.3d 180, 185 (2d Cir.1995) ("A warrantless search is *per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions.") (internal quotation omitted).

For the warrantless entry of a home to be rendered reasonable despite the presumption to the contrary, it must "meet an exception to the warrant requirement." *Anthony v. City of New York*, 339 F.3d 129, 135 (2d Cir. 2003). Exigent circumstances exist permitting warrantless entry if law enforcement has probable cause to believe that a person is "seriously injured or threatened with such injury." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006); *Chamberlain Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 105–06 (2d Cir. 2020) (officers may enter

---

1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980).

private home without a warrant "to render emergency aid") (citing *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998)). "Risks that a child will suffer actual injury, sexual abuse, or be left bereft of care and supervision can suffice to create an emergency." *E.D. ex rel. V.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 361 (S.D.N.Y. 2010); *see also Callahan v. City of New York*, 90 F. Supp. 3d 60, 69-70 (E.D.N.Y. 2015) (police responding to 911 call reporting unsupervised minor children in room in a homeless shelter had probable cause to lawfully enter).

Plaintiff alleges that police officers came to her home in response to an allegedly false report that her children were home unsupervised and injured.[4] These allegations strongly suggest that the police acted lawfully. Plaintiff acknowledges that the police came to her apartment in response to a 911 call regarding her children's welfare. Although Plaintiff alleges that the report was false, the police were not in a position to know the veracity or reliability of the report on which they relied. "When information is received from a putative victim or an eyewitness, probable cause exists unless the circumstances raise doubt as to the person's veracity." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). And "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence" before acting on the information. *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir.1997).

Plaintiff provides no facts suggesting that the police should have known that the report was false, that there was any reason for them to question the reliability of the report, or that any constitutional violation occurred as a result of the police response to the 911 call.[5]

---

[4] Plaintiff acknowledges that she was not at home when the police came. It thus appears that she disputes the characterization that her children were hurt or in need of aid, but does not dispute that they were unsupervised.

[5] Plaintiff alleges that the police officers threatened and traumatized her children. The provision governing appearances in federal court, 28 U.S.C. § 1654, allows two types of

The Court grants Plaintiff leave to file a second amended complaint to provide any facts in support of a claim against the police arising out of events occurring on July 30, 2020.

Plaintiff also claims that Officer Canales took no action in connection with her report that Powell had threatened her with a knife. But there is no right to an investigation by police officers or other government officials. *See DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 195-96 (1989) (the Due Process Clause generally confers no affirmative right to governmental aid); *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (holding that there is "no constitutional right to an investigation by government officials") (citation omitted). Any exceptions to this rule do not apply to the facts alleged. *See Dwares v. City of N.Y.*, 985 F.2d 94, 98-99 (2d Cir. 1993). Accordingly, Plaintiff's allegation against Officer Canales fails to state a claim on which relief may be granted.

### 4. New York State

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to

---

representation: "that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing [her]self." *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (internal quotation marks and citation omitted). Generally, a non-attorney parent cannot bring an action on behalf of her minor children in federal court without counsel. *See Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005). And "because *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to [her]." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998); *Cheung v. Youth Orch. Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("[I]t is not in the interests of minors . . . that they be represented by non-attorneys."). A Fourth Amendment "child-seizure claim belongs only to the child, not to the parent." *Southerland v. City of New York*, 680 F.3d 127, 143 (2d Cir. 2012). Plaintiff has alleged no facts suggesting that she is an attorney, and thus she cannot assert any claims on behalf of her children. Any claims Plaintiff seeks to assert on their behalf are dismissed without prejudice.

state agents and state instrumentalities that are, effectively, arms of a state." *Id.* New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

Plaintiff's § 1983 claims against the State of New York are therefore barred by the Eleventh Amendment and are dismissed.

### 5.  Family court referee and judges

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "A private actor may be afforded the absolute immunity ordinarily accorded judges performing their authorized judicial functions if the private actor's role is "'functionally comparable'" to the roles of those judges, or his acts are integrally related to an ongoing judicial proceeding[.]" *Id.* (internal citations omitted). This includes referees in Family Court proceedings. *See, e.g.*, *Renner v. Stanton*, No. 13-CV-1676 (DLI), 2013 WL 1898389, at *3 (E.D.N.Y. May 7, 2013) (reasoning that similarly to a judge performing acts in his or her judicial capacity, "a court appointed referee is . . . entitled to absolute immunity for her official acts").

"Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* (citations omitted). This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 9-10; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in

13

nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Here, Plaintiff asserts claims against Suffolk County Family Court Referee Amoa, Suffolk County Family Court Judge Hensley, and Bronx County Family Court Judge Gordon-Galchus for decisions rendered in ongoing custody proceedings over which they are presiding. Plaintiff seeks to recover monetary damages based on injuries that she claims arise out of their official actions, but she does not plausibly allege facts that suggest that they acted outside their judicial capacities or jurisdiction. Therefore, the Court dismisses Plaintiff's claims against Amoa, Hensley, and Gordeon-Galchus because their actions are shielded by absolute judicial immunity. 28 U.S.C. § 1915(e)(2)(B)(iii).

### C.      Fair Housing Act

The Fair Housing Act (FHA) "broadly prohibits discrimination in housing . . . ." *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979). Specifically, it prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status . . . national origin," or disability. 42 U.S.C.§ 3604(b), (f). To state a claim of disability discrimination under the FHA, a plaintiff must "allege facts that support a plausible claim that the plaintiff was 'a member of a protected class,' suffered relevant 'adverse' treatment, and 'can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation.'" *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (holding that "to make out a case of discrimination of this sort, a plaintiff may not need to prove that [his] protected status was a but-for cause of the adverse action [he] suffered, but only a motivating factor").

The FHA also prohibits retaliation against persons who have asserted their rights under the FHA. *See* 42 U.S.C. § 3617 (unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [among others, §§ 3604 and 3605] of this title").

Even based on a liberal reading of Plaintiff's allegations, the amended complaint does not state an FHA claim against her landlord, Powell. Plaintiff asserts that Powell discriminated against her on the basis of her nationality, family size, religion, and source of income. At the outset, some of these factors are not protected by the FHA or any other federal law. Moreover, there are no facts showing that Powell's conduct can be attributed to any animus against Plaintiff *because* of a characteristic protected under the FHA. In other words, Plaintiff does not show any connection between how Powell treated her and her nationality, religion, or familial status. Instead of alleging facts showing that Powell discriminated against her, Plaintiff relies exclusively on legal conclusions and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), which are insufficient to state a claim under Rule 8 of the Federal Rules of Civil Procedure.

The Court grants Plaintiff leave to file a second amended complaint to provide any facts in support of a housing discrimination claim.[6]

---

[6] If Plaintiff files a second amended complaint that states a viable claim, the Court will determine whether to exercise its supplemental jurisdiction, under 28 U.S.C. § 1367(c)(3), over any state law claims. *See Martinez v. Simonetti*, 202 F.3d 625, 636 (2d Cir. 2000) (directing dismissal of supplemental state-law claims where no federal claims remained).

**D.      Federal criminal statute**

Plaintiff asserts that Defendants violated 18 U.S.C. § 1203 ("hostage taking"). Violation

of a federal criminal statute, however, cannot provide the basis for a civil action because a

private citizen cannot prosecute a criminal action in federal court. *See Leeke v. Timmerman*, 454

U.S. 83 (1981) (a private citizen lacks a judicially recognizable interest in the prosecution or

nonprosecution of another); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d

Cir. 1994) (criminal statutes do not provide private causes of action). Criminal prosecutions are

within the sole province of federal prosecutors who are "immune from control or interference by

citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972);

*see Atkins-Payne v. Dime Savings Bank*, 2015 WL 48882495, *3 (W.D.N.Y. Aug. 14, 2015);

*New York v. Muka*, 440 F. Supp. 33, 36 (N.D.N.Y. 1977). Because Plaintiff has no right or

authority to compel anyone's prosecution or to enforce federal criminal laws, she lacks standing

to bring such a claim. *See Walzer v. Town of Orangetown*, No. 13-CV-7971 (CS), 2015 WL

1539956, *6 (S.D.N.Y. Apr. 7, 2015) (a private citizen does not have standing to contest the

nonprosecution of alleged perpetrators).

In an abundance of caution, the Court grants Plaintiff leave to replead her claims against

the police officers, arising out of the events occurring on July 30, 2020, and her housing

discrimination claims against her landlord.

## CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on

the docket. Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is

dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii).

The Court grants Plaintiff leave to replead a § 1983 claim against the police officers,

arising out of their arrival at her home on July 30, 2020; and a housing discrimination claim

under the FHA against Powell. Plaintiff must submit the second amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Second Amended Complaint," and label the document with docket number 20-CV-9171 (LLS). A Second Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and she cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted and on immunity grounds.

SO ORDERED.

Dated:   March 22, 2021
         New York, New York

                                            _Louis L. Stanton_
                                            LOUIS L. STANTON
                                            U.S.D.J.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

\_\_\_\_\_CV_____

(Include case number if one has been assigned)

## SECOND AMENDED
# COMPLAINT

Do you want a jury trial?
☐ Yes    ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐   **Federal Question**

☐   **Diversity of Citizenship**

### A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

### B.   If you checked Diversity of Citizenship

#### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
                           (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of

          (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II.  PARTIES

## A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

_____

First Name                Middle Initial        Last Name

_____

Street Address

_____

County, City                    State             Zip Code

_____

Telephone Number              Email Address (if available)

**B.  Defendant Information**

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1: _____

First Name                          Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                          State                   Zip Code

Defendant 2: _____

First Name                          Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                          State                   Zip Code

Defendant 3: _____

First Name                          Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                          State                   Zip Code

Defendant 4: _____

First Name                          Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                          State                 Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

## V.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Street Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

| | |
|---|---|
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☐ Yes   ☐ No

> If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.



**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

## Civil case(s) filed in the Southern District of New York:

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____


_____
Name (Last, First, MI)

_____
Address          City          State          Zip Code

_____
Telephone Number          E-mail Address

_____
Date          Signature

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007